Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On the date of the employees alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On that date, an employment relationship existed between the employee and defendant-employer.
3. The employees compensation rate was $411. 03.
4. A set of the employees medical records, contained in two volumes and received from defendants counsel on 21 July 1999, is admitted into evidence.
5. Plaintiffs responses to interrogatories 1, 2 and 4 of Defendants First Set of Interrogatories, received from defendants counsel on 14 June 1999, are admitted into evidence.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On 7 September 1996, the employee was sixty-four years old. He had been employed by defendant-employer as a rip saw operator since 1981.
2. Prior to 7 September 1996, the employee experienced several health problems including hypertension and dizziness. At some time prior to 7 September 1996, the employee suffered a stroke.
3. On Saturday, 7 September 1996, the employee reported to work as scheduled shortly before 7:00 a.m. The air temperature was cool. The employees work place was dry and well ventilated. There were no unusual fumes or odors in the vicinity of the employees work area.
4. The employee arrived at work at the same time as his co-worker, Mr. Sparks. Prior to beginning their work shift, the employee and Mr. Sparks sat together on a bench in an area adjacent to their work area. Approximately five minutes prior to the beginning of the shift, the men moved from the bench toward their workstations.
5. To enter the work area, the employee opened a roll-up door. The employee was not required to bend over to open the door, and could open the door from an upright position. The employees workstation was located nearer to the entry door than Mr. Sparks workstation. When the employee arrived at his workstation, he removed his locker key from his pocket, unlocked the locker and placed his lunch pail on a shelf in the locker as was his custom. During this time, the employee and Mr. Sparks continued to chat together.
6. After the employee arrived at this workstation, Mr. Sparks continued walking toward his workstation. The employee and Mr. Sparks continued talking as Mr. Sparks moved away from the employee and towards his own workstation. The employee suddenly stopped talking. When the employee stopped talking, Mr. Sparks inquisitively turned to face the employee. At that time, the employee was standing motionless in his work area. His arms were at his side. He was not walking. The employees eyes then began to close and he fell backward. The employee made no attempt to break his fall. He landed on his back and the back of his head struck the concrete floor.
7. The employee did not slip or trip prior to his fall.
8. The employees co-workers immediately came to his assistance and summoned emergency medical technicians. By the time the ambulance arrived, the employee had regained consciousness, but was perspiring profusely. At that time, employee was experiencing an irregular heartbeat or atrial fibrillation.
9. The employee was transported to Lexington Memorial Hospital. Upon his arrival in the emergency department, the employee continued experiencing atrial fibrillation. While receiving treatment at Lexington Memorial Hospital, the employees mental status began to deteriorate, prompting medical care providers to order a CT scan of the employees brain. The CT scan revealed bleeding in the employees brain. The employee was immediately transferred to Wake Forest University Baptist Medical Center where he came under the care of neurosurgeon, Dr. Charles L. Branch, Jr.
10. Dr. Branch performed surgery to remove a subdural hematoma from the employees brain. Thereafter, for a period of approximately ten days, the employees condition improved. However, after ten days of improvement, his condition again began to deteriorate as a result of his having a brain stem stroke. As a result of this stroke, the employee died on 8 October 1996.
11. The evidence of record is insufficient to prove by its greater weight that the brain stem stroke was caused by the employees fall on 7 September 1996.
12. Prior to his fall on 7 September 1996, the employee was experiencing atrial fibrillation, an idiopathic condition wholly unrelated to his employment with defendant-employer. The employee lost consciousness and fell on 7 September 1996 due to this idiopathic condition, not a cause or condition related to his employment.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 7 September 1996, the employee did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
2. Plaintiff is entitled to no compensation under the North Carolina Workers Compensation Act.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiffs claim must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs.
This the ___ day of August, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER